Reid W. Lambert, #5744
**STRONG & HANNI, P.C.**
102 S. 200 E. Suite 800
Salt Lake City, UT 84111
Telephone: (801) 532-7080
Email: rlambert@strongandhanni.com

Attorneys for the Unbuilt TIC Owners

| | |
|---|---|
| **IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH** | |
| In re:<br><br>**Rockwell Debt Free Properties, Inc.**<br><br>Debtor. | Case No.      20-25326<br><br>Chapter 7<br><br>Judge Kevin R. Anderson |
| **MOTION OF THE UNBUILT TIC OWNERS AND THE CARMEL TIC OWNERS FOR ORDER EXPRESSLY LIMITING AUTOMATIC STAY TO PROCEEDINGS AGAINST DEBTOR ENTITIES** | |

The Unbuilt TIC Owners, through their counsel, Reid W. Lambert,[1] hereby move for an

Order expressly limiting the automatic stay to proceedings against the Debtor entities.  By the

signature of their counsel, Wesley D. Felix, the "Carmel TIC Owners,"[2] also join in the Motion.

## RELIEF REQUESTED

The Unbuilt TIC Owners and the Carmel TIC Owners seek an order expressly limiting

the reach of the automatic stay in this case to proceedings against the Debtor entities only and

---

[1] The Unbuilt TIC Owners include the tenant-in-common owners of properties located in Jacksonville, Florida; Dublin, Ohio; Independence, Ohio; and Toledo, Ohio.  A complete list of the Unbuilt TIC Owners is included with counsel's Notice of Appearance and Request for Notice filed on September 3, 2020.

[2] The Carmel TIC Owners consist of 18 creditor parties for which attorney Wesley D. Felix entered an appearance on September 4, 2020 as docket no. 6.

expressly excepting from the stay all proceedings against non-debtor parties, including but not

limited to the Debtor's principals, Jordan Nelson, Christopher Ashby, and Scott Beynon (the

"Rockwell Individuals"). The basis for the relief sought is that 11 U.S.C. § 362 (a)(1) imposes a

stay of proceedings only as to proceedings against "the debtor," and the general rule in the Tenth

Circuit is that the stay does not apply to proceedings against non-debtor parties. While courts

have recognized exceptional circumstances that may justify extending the stay to allow a debtor

to reorganize, none of these circumstances exist in this Chapter 7 case.

### BACKGROUND

1.      The host of entities included as Debtors in this case are all affiliates of the

principal Debtor, Rockwell Debt Free Properties, Inc. ("Rockwell") and are referred to in this

case as the Debtors or the Rockwell Entities. Prior to bankruptcy, Rockwell was in the business

of selling tenant-in-common interests in real estate.

2.      In 2017 and 2018, The Unbuilt TIC Owners and the Carmel TIC Owners

purchased tenant-in-common interests in commercial properties held out to be event venues that

would be leased to Noah Corporation ("Noah"). The Unbuilt TIC Owners and the Carmel TIC

Owners paid Rockwell approximately $25.0 million total for these interests.

3.      In approximately March of 2019, Noah failed to pay lease payments due to the

TIC owners on all or almost all of its event venue facilities. During the same period, the Carmel

TIC Owners and the Unbuilt TIC Owners discovered that the money they had paid for the

completed event venues in 2017 and 2018 had been diverted and construction of their event

venue buildings was never completed, or in some cases never really started. They were left with

a piece of undeveloped land, in most cases subject to mechanics liens, unpaid property taxes, use

restrictions, and unpaid owners' association dues.  In short, they lost almost their entire

investment.

4.      In April of 2019, the Carmel TIC Owners sued Noah, three of the Rockwell

Entities, the Rockwell Individuals, and several other defendants, asserting claims for

misrepresentation, fraud, securities violations (including securities fraud), unjust enrichment, and

conspiracy.  That case remains pending in the District Court for the District of Utah and is

known as *DiTucci v. Ashby*, Case No. 2:19-cv-00277 (the "DiTucci Case").

5.      In May of 2019, Noah Corporation filed a chapter 11 bankruptcy, which was later

converted to a liquidation under chapter 7.

6.      In October of 2019, the Rockwell Entities and the Rockwell Individuals moved

the Court in the DiTucci case to compel arbitration of all claims against them.  On stipulation of

the parties, the matter was referred to arbitration (the "DiTucci Arbitration") in November of

2019.

7.      In January of 2020, the Unbuilt TIC Owners sued two of the Rockwell Entities,

the Rockwell Individuals, and a number of other parties in a lawsuit now pending as *Fucci, et al.

v. Bowser, et al*., Case No. 2:20-cv-0004 in the United States District Court for the District of

Utah (the "Fucci Case").   In the Fucci Case, the Unbuilt TIC Owners have asserted claims for

misrepresentation, fraud, securities violations (including fraud), conspiracy, aiding and abetting,

unjust enrichment, and abuse of vulnerable adults against the Rockwell Entities and the

Rockwell Individuals.

8.      On May 15, 2020, the Carmel TIC Owners amended their Complaint in the DiTucci Arbitration.  A copy of the Amended Complaint is included as Exhibit A to the Rockwell Individual's Motion to Extend the Automatic Stay, filed as Docket No. 14 in this case.

9.      On September 2, 2020, Rockwell and the Rockwell Entities filed the above-captioned bankruptcy.  Rockwell immediately notified the arbitrator in the DiTucci arbitration of the bankruptcy and sought a stay of proceedings.  In their pending Motion to Extend the Automatic Stay in this case (Dkt. #14), the Rockwell Individuals seek a stay of the entire DiTucci Arbitration based on the bankruptcy.  The Carmel TIC Owners seek to proceed with the DiTucci Arbitration, which is currently set for trial in December of 2020.

10.     Rockwell also filed a notice of this bankruptcy in the Fucci Case, and the Court noted on the docket, "Case Stayed per [the notice]."  After resolution of this Motion, the Unbuilt TIC Owners intend to move the Court to modify the stay in the Fucci case so that it is limited to the Debtor Entities only.

## ARGUMENT

For the reasons set forth herein, the Unbuilt TIC Owners and the Carmel TIC Owners urge the Court to grant the motion and allow all proceedings against non-debtor parties to proceed.

I.      BY ITS TERMS, THE AUTOMATIC STAY IS LIMITED TO PROCEEDINGS AGAINST THE DEBTORS.

In *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324 (10th Cir. 1984), the Tenth Circuit adopted the rule prevailing in most circuits that the automatic stay does not apply to proceedings against non-debtors.  The Tenth Circuit reasoned that the legislative purpose behind

11 U.S.C. § 362 was to "permit the debtor to organize his or her affairs without creditor

harassment and to allow orderly resolution of claims." *Id.* at 1330.  It concluded as follows:

> I would make no sense to extend the automatic stay protections to solvent
> co-defendants.  They don't need it, and at the same time it would work a hardship
> on plaintiffs, by giving an unwarranted immunity from suit to solvent co-
> defendants.  Extending the stay to protect solvent co-defendants would not
> advance either of the purposes underlying the automatic stay.  Accordingly, we
> join with the other circuit courts in concluding that 11 U.S.C. § 362 stays
> litigation only against the debtor, and affords no protection to solvent co-
> defendants.

Ten years later, the Tenth Circuit cited *Fortier* and reiterated this general rule in *Oklahoma*

*Federated Gold and Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994).  It remains

the starting point for any analysis of application of the automatic stay to non-debtor parties.  *See*

*Hart v. Connected Wireless, Inc.*, 2019 WL 861341, at *1 (D. Utah Feb. 22, 2019)(citing

*Blodgett*); *Banner Bank by AmericanWest Bank v. Real Estate Investor Education, LLC*, 2018

WL 6725389, *2 (D. Utah Dec. 21, 2018)(citing *Fortier*); *In re Peeples*, 553 B.R. 892, 899

(Bankr. D. Utah 2016).

In this case, the Rockwell Individuals are solvent co-defendants.  The claims against

them are primarily tort claims asserted against them based on their individual conduct.  The

claims against them are not dependent on proving any claim against Rockwell or the Rockwell

Entities.  The Unbuilt TIC Owners and the Carmel TIC Owners submit that the automatic stay

simply does not apply to these independent claims against solvent co-defendants.  *See Peeples*, at

900 (concluding that even where a creditor may have a valid, related claim against the debtor, a

creditor is free to pursue its claim against a non-debtor if there is an "independent basis for the

creditor to pursue that claim").

5

II.    THE NARROW EXCEPTIONS TO THE GENERAL RULE DO NOT APPLY
IN THIS CHAPTER 7 BANKRUPCY CASE.

In 1986, the Fourth Circuit decided *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th

Cir. 1986).  The debtor, A.H. Robins Co., Inc. ("Robins"), filed bankruptcy while facing

numerous product liability cases concerning its Dalkon Shield product.  While all parties agreed

that the automatic stay applied to all claims against Robins, many plaintiffs sought to sever their

claims and proceed against the solvent co-defendants, which consisted primarily of certain

principals of the debtor.  Robins commenced an adversary proceeding against plaintiffs from

eight separate cases seeking a declaration that proceeds of Robins's insurance policies were

property of the estate and enjoining the prosecution of claims against the non-debtor co-

defendants.  The District Court granted a preliminary injunction to that effect, and a few of the

plaintiffs appealed.

The Fourth Circuit began with a lengthy discussion of the district court's jurisdictional

basis for the preliminary injunction.  It ultimately concluded that under 11 U.S.C. § 362 (a)(1)

and (3), 11 U.S.C. § 105, and 28 U.S.C. § 1334 (b), the district court had jurisdiction to issue the

preliminary injunction in the bankruptcy case.  As to § 362 (a)(1), it wrote as follows:

> Subsection (a)(1) is generally said to be available only to the debtor, not
> third party defendants or co-defendants. The rationale for this narrow construction
> of the statute has been stated in *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d
> 1194, 1196–1197 (6th Cir.1983), and in our own case of *Williford v. Armstrong
> World Industries, Inc.,* 715 F.2d 124, 126–27 (4th Cir.1983), and it need not be
> repeated here. However, as the Court in *Johns-Manville Sales Corp.,* 26 B.R. 405,
> 410 (S.D.N.Y.1983) remarked, in discussing the oft-cited case, *Royal Trucks &
> Trailer v. Armadors Meritina Salvadoreana,* 10 B.R. 488,  491 (N.D. Ill. 1981),
> "there are cases [under 362(a)(1) ] where a bankruptcy court may properly stay
> the proceedings against non-bankrupt co-defendants" but, it adds, that in order for
> relief for such non-bankrupt defendants to be available under (a)(1), there must be
> "unusual circumstances" and certainly "'[s]omething more than the mere fact that
> one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown

6

in order that proceedings be stayed against non-bankrupt parties.'"  This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case.  To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

The Tenth Circuit acknowledged this "narrow exception" in *Blodgett*, but declined to extend the stay in that case because the claims against the co-defendants were "separate and independent" from the claims asserted against the debtor.  *Blodgett*, at 142.  Based on the ruling, the court in *In re Peeples* concluded as follows:

> Another example of actions against non-debtors that are not stayed under § 362 (a)(1) are actions against co-defendants.  "It is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor, even if they are in a similar legal or factual nexus with the debtor." [citation omitted] This principle has been followed even when the action taken was against a former manager of the debtor who argued that the "real party in interest is the Debtor," and that the proceeding "would adversely affect the administration of the estate." [*In re Medical Mgmt. Grp., Inc.*, 2003 WL 21487310, at *4 (10th Cir. BAP June 27, 2003].

*Peeples*, at 899.  The *Peeples* court (no, not the People's Court) ultimately held that if the action is not "dependent upon the creditor's claim against the debtor" but may be asserted independently, a creditor should be free to pursue its claims against a non-debtor.  *Id.* at 900.

In this case, the Carmel TIC Owners and the Unbuilt TIC Owners' claims against the Rockwell Individuals and other third parties do not depend on first proving claims against Rockwell and the Rockwell Entities.  Each defendant party is liable for torts or statutory claims arising out of its own conduct, without the need to make any express

determinations as to any debtor.  For this reason alone, the Court should grant this motion

and expressly limit the scope of the automatic stay to proceedings against the Debtors

only.

There is a further reason, however, that the *Robins* exception to the general rule

does not apply.  In *Robins*, the underlying basis for the exception was that a stay was

necessary to accommodate the debtor's efforts to reorganize under chapter 11.  *Robins*,

788 F.2d at 998.  In fact, that court found that allowing piecemeal actions against the

debtor's insurance proceeds would run counter to the "unquestioned public interest in

promoting a viable reorganization of the debtor."  *Id.* at 1008.  It found that "if the suits

are permitted to continue and discovery allowed, any effort at reorganization of the

debtor will be frustrated, if not permanently thwarted."  *Id.*

Based on counsel's review, almost every case to find the "narrow exception"

applicable has been a chapter 11 reorganization case.  In fact, with one exception,[3] every

case cited in the Rockwell Individuals' related Motion to Extend the Stay (Dkt. #14) is a

chapter 11 case in which the Court finds a stay necessary primarily to facilitate the

---

[3] *Hart v. Connected Wireless, Inc.*, 2019 WL 861341 (D. Utah 2019) involved the
Chapter 7 filing of Connected Wireless, Inc.  However, the district court's decision, filed three
days after an emergency motion was filed and within ten days after the bankruptcy filing,
contained no analysis unique to chapter 7 or any explanation why the prospect of possibly
liquidating a claim in a chapter 7 case would be deemed harmful.  In fact, the Court justified its
ruling with the alternative argument that a stay was appropriate under its general authority to
control its docket and to prevent duplicative litigation.  Unfortunately, this hasty ruling was
never revisited in the case.  A review on PACER reveals that very shortly after the ruling, the
Connect Wireless bankruptcy was dismissed, Connected Wireless failed to appoint counsel and
was defaulted, and the claims against the co-defendant were dismissed by a judgment on the
pleadings.  In short, the precedential value of *Hart* concerning the scope of the automatic stay in
a chapter 7 case is extremely limited.

debtor's efforts to reorganize.  *See*, *e.g.*, *In re Eagle-Picher Industries, Inc.* 963 F.2d 855,

859 (Sixth Cir. 1992)(court determined that absence of stay would result in irreparable

harm to debtors efforts to reorganize under chapter 11); *In re Midway*, 426 B.R. 327, 334

(Bankr. D. Del. 2010)(chapter 11 case identifying key factor as effect on "debtor's assets

or its ability to pursue a successful plan of reorganization"); *In re Jefferson County,*

*Alabama*, 491 B.R. 277, 287 (Bankr. N.D. Ala. 2013)(chapter 9 case in which key factor

was "allowing the Chapter 9 adjustment process to move forward in a fair and orderly

fashion"); *In re American Film Technologies, Inc.*, 175 B.R. 847, 855 (Bankr. D. Del.

1994)(chapter 11 case relying substantially on need for time to reorganize, but

acknowledging that at some point liability will need to be established); *In re Johns-*

*Manville Corporation*, 26 B.R. 420, 425 (Bankr. S.D.N.Y. 1983)(chapter 11 case

discussing stay as tool to "permit the debtor to attempt a repayment or reorganization

plan"); *In re Sudbury, Inc.*, 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992)(chapter 11 case

where stay was particularly important where "debtor is struggling under a very tight time

schedule to reorganize").  The Unbuilt TIC Owners and the Carmel TIC Owners submit

that the narrow *A.H. Robins* exception is a creature unique to cases involving

reorganization under chapter 11, and simply does not apply in a chapter 7.

A review of the various stated reasons for the exception confirms that there is no

basis for extending the stay to non-debtors in this Chapter 7 case.  One common basis for

arguing that the exception applies is a debtor's "absolute indemnity obligation" to its

principals.  Based on Rockwell's recent amendment of its schedules to include

contingent, unliquidated claims for indemnification of its principals (Dkt. #12), there is

some possibility that Rockwell may raise this issue here.  In a chapter 11 case, indemnity

obligations may burden a reorganizing debtor in a few different ways.  If the debtor does

not choose to reject the contract requiring indemnification, it may have to spend money

on the defense of the action that could otherwise be used to reorganize.  A debtor might

also be required to participate or at least monitor the action, in light of the possible effect

the indemnification claim may have on a future reorganization.  In a chapter 7 case, there

is no such concern.  The officers, having been completely ousted by the chapter 7 trustee,

may indeed accrue a claim for indemnification, but the estate will actually benefit from

the timely liquidation of that claim in litigation for which the estate will incur no expense.

Since the outcome of the litigation will have no preclusive effect on the Trustee, the

payment, subordination, or adjustment of the indemnification claims can all be addressed

in the claims process in due course.  In short, the prospect of an indemnification claim is

no burden to chapter 7 trustee.

A second reason for the narrow exception is that extending the stay allows the

debtor's principals to focus on reorganization instead of having to commit their time and

efforts to defense of litigation.  In this chapter 7 case, however, the Rockwell Individuals

are completely ousted from management immediately upon filing bankruptcy under

chapter 7.  *In re C.W. Mining Co.*, 636 F.3d 1257, 1261 (10th Cir. 2011).  Diversion of

their attention is not a significant burden to a chapter 7 trustee.

A third reason often discussed as a basis for the narrow exception is the prospect

that a judgment against the non-debtors may have preclusive effect in the bankruptcy.  In

a chapter 11 reorganization that can be significant, because the litigation of claims is

10

often important to the debtor's ability to reorganize.  In a chapter 7, there is no burden to

a trustee, who is likely less inclined (and often economically unable) to litigate claims in

the same fashion.  In this case, the Unbuilt TIC Owners and the Carmel TIC Owners will

undoubtedly file proofs of claim for the full amount of their losses.  It is unlikely that a

Trustee would have the inclination or resources to object to the claims, and even less

likely that a judgment against the principals would impair that objection by some

application of non-mutual collateral estoppel.  In short, the prospect of a judgment

against the principals is not a substantial burden on a chapter 7 trustee.

A fourth reason for the exception, and the last addressed here, is the need for

judicial economy.  In a chapter 11 case, it may make some sense to allowing the debtor to

litigate all claims in a single proceeding as part of the bankruptcy.  In a chapter 7 case,

however, it makes no sense for the bankruptcy court to expand its reach to include these

creditor-plaintiffs' claims against non-debtors.  In fact, it would likely exceed its

jurisdiction to do so.  Absent dismissal of the bankruptcy, the claims of the Unbuilt TIC

Owners and the Carmel TIC Owners against the Rockwell Individuals will ultimately be

litigated outside of this bankruptcy and without the participation of Rockwell, the

Rockwell Entities, or the Trustee.  A stay will merely delay the inevitable, to the

prejudice of the claimants.

In summary, this case is fundamentally different than all of the chapter 11 cases

cited to this Court.  The Rockwell Individuals are not involved in trying to reorganize

Rockwell, and the early liquidation of their indemnification claim will not burden the

chapter 7 trustee.  The Court should determine that the *A.H. Robins* narrow exception has

little or no application in a chapter 7 liquidation generally, and particularly under the circumstances of this case.

## CONCLUSION

For the reasons set forth above, the Unbuilt TIC Owners and the Carmel TIC Owners urge the Court to grant this motion and enter an order expressly limiting the automatic stay in this case to proceedings against the Debtors, thus permitting proceedings against all non-debtor parties, including the Rockwell Individuals, to proceed.

Dated this 24th day of September, 2020.

**STRONG AND HANNI**

*/s/ Reid W. Lambert*
Reid W. Lambert
Attorneys for the Unbuilt TIC Owners

Dated this 24th day of September, 2020.

**FELIX WEINBERG PLLC**

*Wesley D. Felix*
Wesley D. Felix
Attorney for the Carmel TIC Owners

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020, I electronically filed the foregoing **MOTION OF THE UNBUILT TIC OWNERS AND THE CARMEL TIC OWNERS FOR ORDER EXPRESSLY LIMITING THE AUTOMATIC STAY TO PROCEEDINGS AGAINST DEBTOR** I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system:

- **Steven R. Bailey tr**    trusteebailey@baileylaw.org, UT06@ecfcbis.com
- **Andres' Diaz**    courtmail@adexpresslaw.com
- **Wesley D. Felix**    wfelix@deisslaw.com, nburza@deisslaw.com
- **Reid W. Lambert**    rlambert@strongandhanni.com, tlawrence@strongandhanni.com
- **Chad S Pehrson**    cpehrson@parrbrown.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov

I hereby certify that on September 24, 2020, I caused to be served a true and correct copy of the foregoing **MOTION OF THE UNBUILT TIC OWNERS AND THE CARMEL TIC OWNERS FOR ORDER EXPRESSLY LIMITING THE AUTOMATIC STAY TO PROCEEDINGS AGAINST DEBTOR ENTITIES** be sent by regular first-class United States mail, postage fully pre-paid, addressed to:

Rockwell Debt Free Properties, Inc.
8494 South 700 East, STE 200
Sandy, UT 84070

Rockwell Debt Free Properties, Inc.
101 South 200 East #700
Salt Lake City, UT 84111

Scott W. Beynon
1767 Sunset Point Circle
Kaysville, UT 84037

Jordan S. Nelson
193 East 8135 South
Sandy, UT 84070

Christopher Ashby
183 East 8135 South
Sandy, UT 84070

_____/s/_____
Tiffany Lawrence
Legal Assistant

13