Reid W. Lambert, #5744
**STRONG & HANNI, P.C.**
102 S. 200 E. Suite 800
Salt Lake City, UT 84111
Telephone: (801) 532-7080
Email: rlambert@strongandhanni.com

*Attorneys for the Unbuilt TIC Owners*

| IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH ||
|---|---|
| In re: <br><br> **ROCKWELL DEBT FREE PROPERTIES, INC.** <br><br> Debtor. | Bankr. No.   20-25326 <br><br> Chapter 7 <br><br> Judge Kevin R. Anderson |
| **UNBUILT TIC OWNERS' REPLY IN SUPPORT OF OBJECTION TO TRUSTEE'S FINAL REPORT** ||

The "Unbuilt TIC Owners" submit this Reply in Support of their Objection to the Chapter 7 Trustee's Final Report (the "Final Report") [Dkt. 185] and in response to Opposition to the Objection ("Opposition") filed by the Westminster TIC Owners ("Westminster Parties") [Dkt. 190]. The Unbuilt TIC Owners urge the Court to order that their proofs of claim, filed in reliance on the Court's Notice dated , should be allowed and paid non-priority general unsecured claims.

## SUMMARY OF FACTS

In the Opposition, the Westminster Parties speculate about what the Unbuilt TIC Owners or their counsel may have known or could have known based on the two notices served by the

1

Court and the single docket entry withdrawing the Second Notice. Speculation is unnecessary, however, and in this case, has little bearing on the equitable analysis to be applied under 11 U.S.C. § 105 and the Tenth Circuit's holding in *In re Themy*. The critical facts here are that approximately 70 families received a notice from the Court that their proofs of claim were due to be filed on January 22, 2021. They received no further or different notice thereafter and filed their proofs of claim prior to that deadline.

As to counsel, it is true that counsel likely received ECF notice of a docket entry dated October 26, 2020, that the Trustee's Request to Send Notice was "withdrawn" as a "duplicate." It is also true, however, that counsel was unaware—both when the "withdrawal" was docketed and at all times before 2025—that the January 22 2021 bar date had been altered. Relying on the Court's notice, all 70 Unbuilt TIC Owners therefore filed their proofs of claim by that date.

While counsel has no recollection of the October 26 2020 ECF docket entry, that entry alone was not clear notice that the January 22 2021 bar date was incorrect. It was not a separate document, as the Notice was; it was not issued by the Court, as the Notice was; and it did not refer to any bar date, whereas the Notice plainly did. It simply withdrew the Trustee's filing as a "duplicate," with no further explanation. Most importantly, of course, it was not served on any of the 70 Unbuilt TIC Owners, who continued to rely on the Court's Notice in working with counsel to file proofs of claim by the stated deadline.

In summary, the Unbuilt TIC Owners submit that the sole reason they filed their proofs of claim when they did was their reliance on the Court's Notice.

# ARGUMENT

### I. THE JANUARY 22, 2021 BAR DATE WAS NEVER PROPERLY WITHDRAWN AND SHOULD BE TREATED AS THE BAR DATE IN THIS CASE.

In the Opposition, the Westminster Parties rely heavily on the October 26, 2020 docket entry withdrawing the Trustee's request for Notice of a Bar Date. The Unbuilt TIC Owners submit, however, that the Notice alone did not and could not change the January 22, 2021 bar date that was set by the Court pursuant to the Request. Rule 3002 gives specific requirements for how a bar date is set, and requires, among other things, that notice be given directly to all parties in interest, and not just attorneys receiving ECF Notice. While a Trustee may *request* that a Notice be sent under Rule 3002 (c)(7), the Notice must ultimately come from the Court, as it did in this case. The Unbuilt TIC Owners submit that there is no question in this case that the January 22, 2021, bar date was properly noticed to the Unbuilt TIC Owners under Rule 3002(c).

Neither Rule 3002 nor any other rule provides a procedure by which a Notice may be withdrawn. In this case, the Trustee apparently realized that he had requested notice twice and withdrew his second request via docket entry. However, the Court never issued a written notice to parties in interest advising of the withdrawal and setting a bar date different from the January 22 2021 date they had previously received by proper notice. The Unbuilt TIC Owners submit that a docket entry withdrawing a *request* is quite different from withdrawal of the actual Rule 3002 Notice, which did not occur in this case. Moreover, a bare docket entry is a far cry from the direct, written notice to parties in interest that Rule 3002 requires to establish a bar date. In short, that entry was insufficient to alter the properly noticed January 22, 2021 bar date.

## II. THE COURT MAY INVOKE ITS INHERENT § 105(a) EQUITABLE POWER TO CORRECT THE ERRONEOUS BAR WITHOUT REQUIRING A SEPARATE MOTION OR ADVERSARY PROCEEDING

### a. The Court's authority to accept the proofs of claim as timely rests solely in its inherent § 105(a) equitable power.

The Tenth Circuit has made clear that "a court has the inherent equitable power to correct its own mistakes."[1] Congress codified that power in 11 U.S.C. § 105(a), which expressly permits a bankruptcy court to "issue any order … necessary or appropriate to carry out the provisions of this title," including action taken *sua sponte* to "enforce or implement court orders."[2] Echoing *Themy*, the Ninth Circuit has warned that "§ 105(a) would be meaningless if courts were unable to correct their own mistakes."[3]

Courts therefore apply a simple equitable rule: when a creditor relies on a court-generated notice that sets the wrong bar date, the court may, under its inherent § 105(a) power **alone**, treat the filing *as if it were made on time*. Through the court's inherent § 105(a) power, the deadline is deemed met, and the rigid exceptions in Rule 3002(c) and any separate motion to "extend" the bar date become irrelevant. That principle extends beyond dischargeability complaints to proofs of claim, as *In re Noll* confirms.[4]

Crucially, the decisions that support this principle rest solely on the court's inherent equitable authority under § 105(a), not on excusable-neglect or other rule-based extensions. In

---

[1] *In re Themy*, 6 F.3d 688, 689 (10th Cir. 1993).
[2] 11 U.S.C. § 105(a).
[3] *In re Anwiler*, 958 F.2d 925, 929 (9th Cir. 1992) (quoted with approval in *Themy*).
[4] *In re Noll*, 491 B.R. 550 (Bankr. E.D. Wis. 2013).

*Themy*, the Tenth Circuit explained that accepting the late complaint "was not a sua sponte extension of the deadline," but rather "an exercise of the court's authority to correct its own errors," expressly grounding that authority in § 105(a).[5] And *In re Sibley* allowed a complaint filed on the 61st day because the clerk "set the wrong bar date," concluding that, "pursuant to [its] inherent equitable powers," the court could treat the filing as timely despite Rule 4004(a).[6] Finally, in *In re Noll*, the court confirmed that "the bankruptcy court had authority under section 105(a) to accept the untimely complaint, because it was untimely due to the court's own error," and it relied on that equitable authority alone.[7]

In none of these cases did the court invoke excusable-neglect doctrine or any other rule-based extension; instead, each court acted sua sponte under § 105(a) to correct its own mistake and avert the injustice that would result from enforcing the erroneous deadline.

Importantly, courts consistently recognize that a bankruptcy trustee functions as an extension of the Court itself; therefore, when the trustee issues an incorrect notice, it is tantamount to the Court committing the error. As the Ninth Circuit put it, "a trustee in bankruptcy is an officer of the Court," acting under its authority.[8] It follows that when the trustee disseminates a notice containing an erroneous bar date, the mistake is, in legal effect, a court-generated error, one the Court may and should correct under its inherent § 105(a) equitable power.

---

[5] *In re Themy*, 6 F.3d at 689.
[6] *In re Sibley*, 71 B.R. 147, 148 (Bankr. D. Mass. 1987).
[7] *In re Noll*, 491 B.R. at 553.
[8] *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967).

### b. As the Court may accept the proofs of claim as timely under its inherent powers, no additional motion or adversary proceeding is necessary.

Neither Rule 3002(c) nor the motion-and-notice system of Rules 4004(b) and 9006(b)(3) governs when tardiness flows from the court itself. *In re Sibley*, applying Rules 4004(b) and 9006(b)(3), explains that Bankruptcy Rules 4004(a) & (b) "set out a clear scheme for time limits on filing dischargeability complaints and for extending that time," and that Rule 4004(b) "is emphatic on the need for filing a motion to extend time before the bar date expires, and on the need for notice and hearing before such an extension."[9] Yet *Sibley* immediately limits that framework, observing that those procedures "are primarily directed at situations where failure to act within a prescribed time period is due to the neglect or delay of the parties themselves" and that, when the error rests with the court, "there is not culpability in that regard; the blame for delay rests squarely on the Court's and clerk's shoulders."[10] Confronted with its own error, the court may therefore dispense with any motion practice and, "using its inherent equitable powers … allow the complaint to stand if equity would be served by ignoring the technical tardiness."[11]

The decisions applying this equitable principle followed exactly that path. *In re Riso* likewise held: "There was no need … to seek an extension if [the creditor] was relying on [the erroneous] deadline. He merely relied upon this as the deadline."[12] And *In re Noll* confirmed that "the bankruptcy court had authority under section 105(a) to accept the untimely [claim] because it

---

[9] *In re Sibley*, 71 B.R. at 148.
[10] *Id* at 149.
[11] *Id.*
[12] *In re Riso*, 57 B.R. 789, 792 (D.N.H. 1986).

was untimely due to the court's own error,"[13] without invoking any Rule 3002(c) exception or granting an extension. In each instance the court acted sua sponte under § 105(a) to correct its mistake and prevent the injustice that would flow from an erroneous bar-date.

Consistent with that authority, the Unbuilt TIC Owners have already done everything the Rules require: by raising the bar-date error in this Objection, they have squarely presented the issue within the ordinary claims-allowance process. Thus, in the course of resolving this Objection, the Court can invoke its inherent power and deem the proofs of claim timely, exactly as the courts did in *Themy*, *Noll*, and *Sibley*. No Rule 9006(b) motion to extend the deadline, and certainly no separate adversary proceeding, is necessary.

### III. THE UNBUILT TIC OWNERS ARE ENTITLED TO EQUITABLE RELIEF BECAUSE THEY ACTUALLY RELIED ON THE JANUARY 22 BAR DATE NOTICE

In their Opposition, the Westminster Parties contend that reliance is impossible because, on October 26 2020, the Trustee uploaded a one-line ECF notation withdrawing the January 22 bar-date notice. That argument ignores what actually happened. The "withdrawal" was merely a cryptic docket entry with no accompanying PDF and, crucially, no service on the creditor matrix. Nothing ever reached the Unbuilt TIC Owners. By contrast, the January 22 bar-date notice was formally served by the Bankruptcy Noticing Center on every creditor, including the Unbuilt TIC Owners, and expressly stated that proofs of claim were due January 22, 2021. Relying on that official notice, counsel calendared the deadline, discussed it with his clients throughout the fall of

---

[13] *In re Noll*, 491 B.R. at 553.

2020, and each Unbuilt TIC Owner filed a proof of claim on or before January 22. Neither counsel nor his staff ever saw the silent withdrawal.

This is exactly the reliance scenario that *Themy*, *Sibley*, *Riso*, and *Noll* say equity must protect. As *Noll* explains, creditors "should be entitled to rely upon that notice," and if a trustee "perceives a problem … the time to speak up is when the date is set, not months later after a creditor has acted in reliance."[14] Here, counsel deliberately worked with his staff to ensure that the Unbuilt TIC Owners' proofs of claim were all timely filed before January 22, 2021. He heard nothing to the contrary for more than four years. Only in early 2025, on the eve of distribution, did the Trustee first suggest that the claims might be late, prompting counsel to discover, for the very first time, a one-line docket notation dated October 26, 2020 purporting to withdraw the January 22 notice. That notation was never served, never accompanied by a separate pleading, and never communicated to the Unbuilt TIC Owners. A lone, unserved docket annotation cannot override a formally served bar-date order that all parties, including the Trustee, treated as operative for years. Because the Unbuilt TIC Owners unquestionably relied on the January 22 notice and filed exactly as directed, the Court should invoke § 105(a) to deem their proofs of claim timely, just as the governing caselaw instructs.

IV. **EQUITY REQUIRES THAT THE UNBUILT TIC OWNERS' PROOFS OF CLAIM BE ACCEPTED**

*In re Themy* and its companion cases stand for the principle that equitable power must be used to prevent an injustice when the court's own misstep threatens to squander substantive

---

[14] *Id* at 554.

rights.[15] Here, denying the Unbuilt TIC Owners recovery would visit precisely that injustice. They are not opportunistic late comers; from the very outset they have been active, visible participants. Indeed, their counsel's notice of appearance was the third entry on the docket, and they have engaged in every major phase of this case since. All parties, including the Trustee and Westminster Parties, have long known that the Unbuilt TIC Owners claim substantial losses caused by the debtor's misconduct.

Those losses are undisputed: the Owners collectively invested millions in unfinished properties and now hold nothing more than unsecured claims for the damage done. Stripping them of any dividend on a purely procedural ground, especially a ground traceable to the Court's own erroneous notice, would create a windfall to junior creditors, while leaving the primary victims empty-handed. *Noll* cautions that when a deadline error is court-generated, the consequences should fall on the debtor, not the innocent creditor;[16] *Sibley* likewise authorizes a court to ignore "technical tardiness" where equity so demands.[17]

Nor can the Trustee or Westminster Parties credibly claim prejudice. The estate has been administered for nearly five years with full awareness of these claims. Accepting the Unbuilt TIC Owners' proofs of claim simply restores the status quo everyone expected until the bar-date error surfaced at the eleventh hour.

---

[15] *In re Themy*, 6 F.3d at 689.
[16] *In re Noll*, 491 B.R. at 554.
[17] *In re Sibley*, 71 B.R. at 149.

For all these reasons, actual reliance, undeniable harm, caselaw precedence, and the absence of prejudice, the Court should employ its inherent § 105(a) authority to deem the Unbuilt TIC Owners' proofs of claim timely and allow them in the full amounts asserted. Anything less would elevate form over substance and yield an inequitable result.

## CONCLUSION

For the reasons stated above, the Unbuilt TIC Owners respectfully ask the Court to sustain its Objection and order the Trustee to amend the Final Report to include their proofs of claim in full.

DATED this 26th day of June, 2025.

                              **STRONG AND HANNI**

                              */s/ Reid W. Lambert*
                              Reid W. Lambert
                              *Attorneys for the Unbuilt TIC Owners*

# CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2025, I electronically filed the foregoing **Unbuilt TIC Owners' Reply In Support of Objection to Trustee's Final Report** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system:

- **Steven R. Bailey tr**    karen@baileylaw.org, UT06@ecfcbis.com
- **Jeffery A Balls**    jballs@parrbrown.com, wtuckett@parrbrown.com
- **Steven W. Call**    scall@rqn.com, docket@rqn.com,ecasaday@rqn.com
- **Deborah Rae Chandler**    dchandler@aklawfirm.com
- **Joseph M.R. Covey**    jcovey@parrbrown.com, calendar@parrbrown.com;lstumpf@parrbrown.com
- **Andres' Diaz**    courtmail@adexpresslaw.com
- **Wesley D. Felix**    wfelix@felixweinberg.com
- **George B. Hofmann**    ghofmann@ck.law, mparks@ck.law;enilson@ck.law
- **Reid W. Lambert**    rlambert@strongandhanni.com, cjohnson@strongandhanni.com
- **Brandon C. Marx**    bmarx@foley.com
- **Maxwell Milavetz**    milamax09@gmail.com
- **Blake D. Miller**    bmiller@aklawfirm.com, millermobile@gmail.com;miller.blaked@gmail.com
- **Brittany J Nelson**    bnelson@foley.com, tscannell@foley.com,hsiagiandraughn@foley.com,acordero@foley.com
- **Chad S Pehrson**    cpehrson@kba.law, exec_assistant_csp@kba.law
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Brenda Elizabeth Weinberg**    bweinberg@ck.law
- **Robert G. Wing**    rwing@parrbrown.com

I hereby certify that on June 26, 2025, I caused to be served a true and correct copy of the foregoing **Unbuilt TIC Owners' Reply In Support of Objection to Trustee's Final Report** to be sent by regular first-class United States mail, postage fully pre-paid, addressed to:

**Jeffrey W Rudy**
Pinnacle Real Estate Services LLC
9708 Bayberry Lane
North Royalton, OH 44133

                */s/ Connie Johnson*