Steven W. Call (5260)
Mel Jones-Cannon (19286)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
(801) 532-1500
scall@rqn.com

*Attorneys for Westminster Claimants*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 20-25326 |
| ROCKWELL DEBT FREE PROPERTIES, INC. | (Chapter 7) |
| Debtor. | Hon. Kevin R. Anderson |

---

### SUR-REPLY AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF WESTMINSTER CLAIMANTS' OBJECTION TO AND RESPONSE TO UNBUILT OWNERS' OBJECTION TO TRUSTEE'S FINAL REPORT

---

COME NOW the Westminster Claimants, by and through counsel, pursuant to the ruling made by the Honorable Kevin Anderson at the hearing on Monday June 23 at 2:00 p.m. that permitted the Westminster Claimants to file a supplemental sur-reply memorandum in support of their *Objection To And Response To Unbuilt Owners' Objection To Trustee's Final Report.*

### RESPONSE TO UNBUILT OWNER'S SUMMARY OF FACTS

*(Clarification regarding the Court's actions vs. the Trustee's actions)*

Unbuilt Owners repeatedly refer to "the two notices served by the Court," however, to clarify, the Second Notice was filed by the Trustee, and the withdrawal of the Second Notice was

also done via a docket text entry that was entered by the Trustee, not the Court. This is easily

verified by looking at the docket entries, which reflect in parentheticals the person filing the entry.

The withdrawal reflected (Baily tr, Steven) as the filer.[1] *See also* Exhibit 2, which contains the

Trustee's June 18, 2025, email.

*(Unbuilt Owners Received Two Notices)*

Opposing counsel states that his clients "received a notice from the Court that their proofs

of claim were due to be filed on January 22, 2021 [and that] they received no further or different

notice thereafter." This is inaccurate for two reasons. The Unbuilt Owners omitted the fact that

they did receive a prior *different* notice, the First Notice, that notified them of the proper January

7, 2021, deadline.

Second, they also received notice of the second notice and the withdrawal of the second notice

based on the notice sent to their attorney of record in the case. Whether or not the Unbuilt Owners

received the withdrawal notice that was sent via ECF directly is not critical. Normally, clients are

not registered ECF users and do not receive ECF notices directly. It is normal for ECF notices to

be sent to counsel who are representing parties in a bankruptcy case because they are registered

ECF users.

(*Opposing Counsel Received Both Notices and the Docket Entry Withdrawing the Second Notice*)

Furthermore, Opposing Counsel's statement that whether or not counsel received the

withdrawal of the Second Notice "has little bearing on the equitable analysis to be applied" is

inaccurate. Opposing Counsel states, "it is true that counsel likely received ECF notice of a docket

entry dated October 26, 2020, that the Trustee's Request to Send Notice was 'withdrawn' as a

---

[1] Docket entries by the Court often reflect the filer as (admin.)

'duplicate.'" As stated, ECF notices are sent to the registered ECF users. Here, the Court's docket indicates that Opposing Counsel likely did receive the ECF notice because he made an appearance earlier in the case before the ECF notice was sent. [Dkt. No. 3] This fact is also corroborated by the Trustee's June 18, 2025, email. Opposing Counsel then states that it has "no recollection of the October 26 2020 ECF docket entry" and that "counsel was unaware—both when the 'withdrawal' was docketed and at all times before 2025—that the January 22 2021 bar date had been altered." This is unfortunate but insignificant legally because all of the Unbuilt Owners had several weeks to file their claims before the original deadline for filing of claims (provided for in the original notice and the docket) had expired.

(*Opposing Counsel has not established that Unbuilt TIC Owners relied exclusively on the Second Notice*)

Opposing Counsel has stated, "the Unbuilt TIC Owners submit that the sole reason they filed their proofs of claim when they did was their reliance on the Court's Notice."[2] There is no admissible evidence that each of the Unbuilt Owners relied solely on the second notice rather than the first. Also, assuming that each relied on the second notice rather than the first, that reliance was not reasonable reliance, given that the second notice had been withdrawn and that the docket continued to reflect the original deadline for filing claims.

*(The Second Notice was Adequately Withdrawn Through a Docket Entry)*

The Court's docket currently reflects, in relevant part, as follows:

10/22/ 2020

---

[2] Counsel also similarly asserts "the 70 Unbuilt TIC Owners, who continued to rely on the Court's Notice in working with counsel to file proofs of claim by the stated deadline" and that "[r]elying on the Court's notice, all 70 Unbuilt TIC Owners therefore filed their proofs of claim by that date."

Trustee's Request for Creditors to File Claims filed by Trustee. Proofs of Claims due by 1/22/2021. (Bailey tr, Steven) WITHDRAWN Modified on 10/26/2020 (fsl). (EOD: 10/22/2020)

10/24/ 2020 Dkt. No. 43

BNC Certificate of Service Re: Notice (related document(s): Trustee's Request for Creditors to File Claims) Notice Date 10/24/2020. (Admin.) (EOD: 10/24/2020)

10/26/2020.

Withdrawal of Document. Reason for Withdrawal: duplicate filing (related document(s): Trustee's Request for Creditors to File Claims) Filed by Steven R. Bailey tr. (Bailey tr, Steven) (EOD: 10/26/2020)

*See* Exhibit 1. The Court's docket also reflect on the first page as follows:

| | |
|---|---|
| Date filed: | 09/02/20 |
| 341 meeting: | 10/21/2020 11:30 a.m. |
| Original Deadline for filing claims | 01/07/2021 |

*Id*.

Unbuilt Owners argue that the docket entry that withdrew the Second Notice was "not clear notice that the January 22, 2021 bar date was incorrect." However, when a document is withdrawn, then a referral to the withdrawn document would reflect what has been withdrawn. The docket entry is clear that the Trustee was withdrawing a duplicate filing for the "Trustee's Request for Creditors to file Claims." Westminster Claimants agree that the withdrawal docket entry text does not state that the original deadline was January 7, 2020, but the first notice and the Court's docket reflect the original, correct bar date.

Unbuilt Owners further argue that the Trustee's withdrawal of his prior notice was a docket entry and that a separate written document was not sent. Westminster Claimants do not dispute that the Trustee's withdrawal was made through a docket entry and that a separate written document was not prepared and mailed. However, it is common for docket entries, including

notices, minute rulings, and other documents, to be made through docket entries and for registered

ECF users to receive notice of those entries via email. The Utah State Bar provides that attorneys

practicing in Utah may be served at his or her email address on file with the Bar, making ECF

notices fully valid.

## ARGUMENT

### I.   UNBUILT OWNERS CANNOT RAISE NEW ISSUES IN A REPLY TYPE MEMORANDUM.

Unbuilt Owners cannot raise new issues in their reply. This Court's Local Rules provide

"[a] reply memorandum is limited to rebuttal of matters raised in the response." Id. In *United States*

*v. Baker*, 676 F. Supp. 3d 1127, 1134–35 (D. Utah 2023), the U.S. District Court for the District

of Utah reiterated that courts typically do not permit new arguments in reply briefs. *Id*. *In re: Motor*

*Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1113 n.5 (10th Cir. 2017) (citing *Reedy v.*

*Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)). The United States Court of Appeals for the Tenth

Circuit Bankruptcy Appellate Panel stated:

> **Further, courts ordinarily do not address legal arguments raised for the first time in a reply brief.**[46] In this case, the Trustee's supplemental brief is analogous to a reply brief containing new legal arguments, and the bankruptcy court's denial of the Trustee's motion relates to its supervision of litigation in this case and many others like it. . . The argument proffered by the Trustee in her supplemental brief is a distinctly legal one that is not dependent upon a change in facts or circumstances as required under the Management Order. Further, it is an argument that clearly could have been made by the Trustee in her opening or reply brief. As a result, we do not believe the bankruptcy court abused its discretion in denying the Trustee's motion for supplemental briefing.

*In re Westby,* 486 B.R. 509, 517 (B.A.P. 10th Cir. 2013) (emphasis added).

Based upon the foregoing, Unbuilt Owners cannot raise the new argument that the notice of the January 22, 2021, claims bar date was not properly withdrawn or that the notice was not clear.

Even if the Court were to allow the new arguments to raised and determined that the Second Notice was not properly withdrawn, a claimant receiving conflicting notice of deadlines to file claims would have been placed on notice that a conflict existed and would have prompted a reasonable person to investigate. A review of the Court's docket would have reflected that the Second Notice had been withdrawn and that the docket continued to reflect the January 7, 2021, deadline.

## II. UNBUILT TIC OWNERS' OBJECTION ALSO FAILS TO COMPLY WITH BANKRUPTCY RULE 9006 FOR AN EXTENSION OF TIME AFTER THE REQUIRED DEADLINE HAS EXPIRED.

In addition to Bankruptcy Rules 9014, 9013, 3002(c)(7), and Local Rule 9013-1 cited in Westminster Claimants' Objection, Rule 9006 also requires that relief sought to extend time for taking action *must* be sought by motion. It provides:

**(b) Extending Time.**

(1) ***In General.*** This paragraph (1) applies when these rules, a notice given under these rules, or a court order requires or allows an act to be performed at or within a specified period. Except as provided in (2) and (3), the court may--at any time and for cause-- extend the time to act if:

(A) with or without a motion or notice, a request to extend is made <u>before</u> the period (or a previously extended period) expires; or

(B) on <u>motion</u> made <u>after</u> the specified period expires, the failure to act within that period resulted from excusable neglect.

(2) ***Exceptions.*** The court must not extend the time to act under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024.

6

>    (3) *Extensions Governed by Other Rules.* The court may extend the time to:
>
>    (A) act under Rules 1006(b)(2), 1017(e), **3002(c),** 4003(b), 4004(a), 4007(c), 4008(a), 8002, and 9033-**but only as permitted by those rules**;

Fed. R. Bankr. P. 9006 (emphasis added). The Court docket is clear, no motion has been filed by the Unbuilt Owners.

## III.   EQUITABLE RELIEF MUST BE SOUGHT THROUGH AN ADVERSARY PROCEEDING.

An adversary proceeding is required to obtain equitable relief. Bankruptcy Rule 7001 explicitly lists the types of proceedings that must be brought as adversary proceedings, including proceedings to obtain an injunction or other equitable relief. The Rule is part of a broader framework that delineates various types of proceedings that must be initiated as adversary proceedings, which ensures that such proceedings are handled with more rigorous procedural requirements. "Federal Rule of Bankruptcy Procedure 7001(7) specifically provides that an adversary proceeding is the appropriate vehicle for obtaining an injunction or any other equitable relief." *In re Turkey Leg Hut & Co. LLC*, 659 B.R. 539, 543 (Bankr. S.D. Tex. 2024) (footnote omitted). While in *In re Gledhill*, 76 F.3d 1070 (10th Cir. 1996), a split decision at the Tenth Circuit affirmed Judge Allen's reimposition of the automatic stay through a Rule 9024 motion to alter and amend an order previously granting relief from the automatic stay ten months earlier for the foreclosure of the Big Rock Candy Mountain without the filing of an adversary proceeding, the Tenth Circuit clarified that an adversary proceeding is required to obtain equitable relief pursuant to 7001(7).

>    The Tenth Circuit Court of Appeals does not interpret § 105(a) so broadly. Repeatedly, the Tenth Circuit has stated that bankruptcy judges may not rely on § 105 to act in a manner inconsistent with specific provisions of the Bankruptcy Code. *See In re Richards,* 994 F.2d 763 765 (10th Cir.1993); *In re Frieouf,* 938

F.2d 1099, 1103 n. 4 (10th Cir.1991); *In re Western Real Estate Fund, Inc.,* 922
F.2d 592, 601 (10th Cir.1990), *opinion modified on other grounds, Abel v. West,*
932 F.2d 898 (10th Cir.1991). The language of § 110(j) is plain. It authorizes
issuance of an injunction only in the context of a civil action.[14]
…
In the case at bar, the Bankruptcy Court did not utilize the procedure required by §
110(j) It entered an Injunction in the main bankruptcy cases based on *sua sponte*
Orders to Show Cause without initiation of an adversary proceeding.

*Fulton v. McVay*, 318 B.R. 546, 554–56 (D. Colo. 2004). For a discussion of the law, *see* Collier

on Bankruptcy, ¶ 7001.08 at 7001-24 (16th ed.)[3] The facts are undisputed that the Unbuilt

Owners are seeking equitable relief despite the fact that no adversary proceeding (or motion) has

been filed.

## IV.   EQUITABLE RELIEF UNDER 11 U.S.C. §105 DOES NOT EMPOWER A BANKRUPTCY COURT TO DISPLACE EXPRESS PROVISIONS IN THE CODE.

Unbuilt Owners argue that this Court may invoke its equitable powers under 11 U.S.C. §

105 without requiring a separate motion or adversary proceeding. Westminster Claimants disagree.

The United States Supreme Court has stated:

> **It is hornbook law that § 105(a) "does not allow the bankruptcy court to
> override explicit mandates of other sections of the Bankruptcy Code."** 2 Collier
> on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers
> authority to "carry out" the provisions of the Code, **but it is quite impossible to do
> that by taking action that the Code prohibits. That is simply an application of
> the axiom that a statute's general permission to take actions of a certain
> type must yield to a specific prohibition found elsewhere.** See *Morton v. Mancari,*
> 417 U.S. 535, 550–551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *D. Ginsberg & Sons,
> Inc. v. Popkin,* 285 U.S. 204, 206–208, 52 S.Ct. 322, 76 L.Ed. 704 (1932).[1] Courts'
> inherent sanctioning powers are likewise subordinate to valid statutory directives
> and prohibitions. *Degen v. United States,* 517 U.S. 820, 823, 116 S.Ct. 1777, 135
> L.Ed.2d 102 (1996); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 47, 111 S.Ct. 2123,

---

[3] Bankruptcy Rule 7001(h) also provides that an adversary proceeding is necessary in "a
proceeding to subordinate an allowed claim or interest-except when subordinations provided in a
Chapter 9, 11, 12, or 13 plan." Id. The relief sought by the Unbuilt Owners is similar to a
subordination claim because the relief sought is essentially seeking subordinate Westminster
Claimants' timely filed claims to the same priority as untimely filed proof of claims.

> 115 L.Ed.2d 27 (1991). We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code. **1195 *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); see, *e.g., Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 24–25, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *United States v. Noland,* 517 U.S. 535, 543, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996); *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

*Law. v. Siegel*, 571 U.S. 415, 421 (2014) (emphasis added). The Tenth Circuit had earlier

addressed the law in *In re Richards,* 994 F.2d 763, 765 (10th Cir. 1993), stating:

> In *United States v. Energy Resources Co.,* 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990), the United States Supreme Court referred to the "traditional understanding" that bankruptcy courts are courts of equity and that under 11 U.S.C. § 105(a) they may "issue *any* order, process or judgment necessary or appropriate to carry out the provisions" of the Bankruptcy Code. (emphasis added) In *In re Western Real Estate Fund, Inc.,* 922 F.2d 592, 601 (10th Cir.1990), *modified on other grounds, Abel v. West,* 932 F.2d 898 (10th Cir.1991), **we also recognized the "supplementary equitable powers" granted bankruptcy courts under 11 U.S.C. § 105(a), but went on to state that such powers, however, "may not be exercised in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code."**

Id. (emphasis added).

The Tenth Circuit also addressed the law in *In re Scrivner,* 535 F.3d 1258 (10th Cir. 2008).

In that case, the bankruptcy court had surcharged certain retirement funds that the chapter 7 debtor

had claimed as exempt. The Tenth Circuit BAP (Judges Glen Clark, Mark McFeeley, and William

Thurman) affirmed. However, on appeal, the Tenth Circuit reversed, holding that because the

surcharge of exempt property is inconsistent with the specific provision of the bankruptcy code

governing exemptions and exempt property, it was beyond the scope of the bankruptcy court's

equitable authority. The Tenth Circuit stated:

> **We have repeatedly emphasized, however, that a bankruptcy court may not exercise its "broad equitable powers" under § 105(a) " 'in a manner that is**

> inconsistent with the other, more specific provisions of the [Bankruptcy] **Code.'** " *In re Frieouf,* 938 F.2d 1099, 1103 n. 4 (10th Cir.1991) (quoting *In re Western Real Estate Fund, Inc.,* 922 F.2d at 601). In other words, a bankruptcy court's exercise of its authority under § 105(a) may not contravene or disregard the plain language of a statute… As we have previously noted, "[t]o allow the bankruptcy court, through principles of equity, to grant any more or less than what the clear language of [a statute] mandates would be tantamount to judicial legislation and is something that should be left to Congress, not the courts." *In re Alderete,* 412 F.3d at 1207 (quotation omitted).

*In re Scrivner*, 535 F.3d 1258, 1263 (10th Cir. 2008) (emphasis added). The law was explicitly applied to Rule 3002(7) in *In re Sunland*, Inc., 534 B.R. 793, 799–800 (Bankr. D.N.M. 2015), in which the bankruptcy court in the District of New Mexico ruled:

> Here, extending the bar date is governed by Fed. R. Bankr. P. 3002(c), which identified specific exceptions to the general bar date rule. None of the exceptions apply in Saylor's case. The "excusable neglect" basis for allowing late-filed claims in Chapter 11 cases, see *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); does not apply in Chapter 7. *Pioneer*, 507 U.S. at 389 n. 4, 113 S.Ct. 1489. See also In re Coastal Alaska Lines, Inc., 920 F.2d at 1432.

> Bankruptcy courts have certain equitable powers under § 105(a). However, bankruptcy courts cannot exercise their equitable power to allow a late filed claim in Chapter 7 cases if no Rule 3002(c) exceptions applies. *See, e.g., In re S.A. Morris Paving Co.*, 92 B.R. 161, 163 (Bankr.W.D.Va.1988) (court lacks equitable power to enlarge the time for filing a proof of claim unless one of the six situations in Rule 3002(c) exists); *In re Jemal*, 496 B.R. 697, 701 (Bankr.E.D.N.Y 2013); *In re Hyde*, 413 B.R. 719, 721 (Bankr.D.Idaho 2009) (applying Rule 3002(c) to a late filed claim in a Chapter 12 case); In re Hayes, 327 B.R. 453, 458 (Bankr.C.D.Cal.2005). *See also In re Dickinson*, 242 F.3d 388, at *2 (§ 105(a) should be used to vary the deadlines in the Bankruptcy Rules only to correct notice problems caused by the court); *Moushigian v. Marderosian*, 764 F.3d 123, 128 (1st Cir.2014) (§ 105(a) should not be used to vary the deadlines in the Bankruptcy Rules); *American Express Centurion Bank v. Schoofs (In re Schoofs)*, 115 B.R. 1, 4 (Bankr.D.D.C.1990) (court doubted whether § 105(a) could be used to override the Bankruptcy Rules).

> This is consistent with the general rule, announced in *Law v. Siegel*, —— U.S. —— –, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014), that although "[s]ection 105(a) confers authority to 'carry out' the provisions of the Code," the Court may not do so "by taking action that the Code prohibits."

*In re Sunland*, Inc., 534 B.R. 793, 799–800 (Bankr. D.N.M. 2015).

Applying controlling law by the U. S. Supreme Court and the Tenth Circuit, this Court may not override the specific limitations provided for under Rules 7001(7), 9006(b)(3), and 3002(c)(7) through equitable relief under § 105.

## V.   UNBUILT OWNERS' CASELAW DOES NOT COMPEL ANY CHANGE TO THE TRUSTEE'S FINAL REPORT.

Unbuilt Owners *cite In re Anwiler,* 958 F.2d 925, 929 (9th Cir. 1992), *In re Noll*, 491 B.R. 550 (Bankr. E.D. Wis. 2013), and *In re Sibley*, 71 B.R. 147, 148 (Bankr. D. Mass. 1987) in support of their objection to the Trustee's Final Report. However, the three cases are legally distinguishable in that all three cases address deadlines in connection with non-dischargeability complaints under Rule 4007(c) and complaints against discharge under Rule 4004(a). This is significant because Rule 3002(c)(7) which addresses the filing of proof of claims provides that a motion for the extension of time for the filing of clams made before or after the deadline "may be granted if the court finds that the notice was insufficient to give the creditor a reasonable time to file." *Id*. The exception does not apply to the facts of this case.

*In re Anwiler* is also distinguishable because it involved two separate notices sent from different courts setting different deadlines for the filing of non-dischargeable complaints and/or complaints against discharge.

In this case, the confusion **resulted from two courts' setting two different deadlines**. **The notices were required by law, and appeared to be valid. The Creditors could have reasonably believed that the 2nd notice was operative since it was issued by the court which had jurisdiction over the case.** The equitable power given to courts by 11 U.S.C. § 105(a) would be meaningless if courts were unable to correct their own mistakes.

*In re Anwiler,* 958 F.2d at 929 (emphasis added). Here, there were not two separate courts setting separate dates.

In *In re Noll*, 491 B.R. 550 (Bankr. E.D. Wis. 2013) the bankruptcy court held that the clerk's error in sending out notice of a new bar date after a case was converted to one under Chapter 7 and reconverted to one under Chapter 13 were sufficient grounds for allowance of proof of claim belatedly filed by creditor prior to expiration of this new bar date. The Court also recognized that no correction of the notice had been made, stating:

> In this case, the Clerk's error caused the second claims deadline to be set, and the Claimant relied on the Clerk's notice in filing his Claim. When the Clerk issued the notice with the second bar date, the Trustee or Debtor could have taken some action to have the notice corrected, but they did not do so. The Debtor, not the Claimant, should bear the consequences of the error in this case.

Id. These conditions do not exist in the present case.

*In re Sibley*, 71 B.R. 147, 148 (Bankr. D. Mass. 1987) involved a circumstance where the notice sent by the bankruptcy court clerk improperly set the bar date for filing non-dischargeable complaints or complaints against discharge on a date that was 61 days after the meeting of creditors rather than 60 days. The creditors filed their complaint timely in compliance with the only notice that was sent.

> The notice of § 341 meeting, sent out to all creditors and the Debtor by the clerk of court, erroneously set the final date for creditors to object to discharge or the dischargeability of debts as September 9, 1986. The clerk has the responsibility to set the § 341 meeting date and the date for filing on objections to dischargeability under Local Bankruptcy Rules 23(A)(1) & (7).

Id. 71 B.R. at 148. Here, there was no improper action taken by the Court or its clerk.

## VI.    THE *THEMY* OPINION IS DISTINGUISHABLE.

The Tenth Circuit opinion in *Themy*, which affirmed the district court (Judge Bruce

Jenkins) and the bankruptcy court (Judge John Allen), also involved the filing of a non-

dischargeable complaint and an objection to discharge. However, the two notices given in that

case were deemed to be orders of the bankruptcy court.

> The bankruptcy court issued a notice setting the § 341 meeting of creditors for
> October 22, 1990, and setting December 21, 1990, as the deadline for filing
> objections to the debtor's discharge under 11 U.S.C. § 727, and for filing complaints
> challenging the dischargeability of a debt under 11 U.S.C. § 523. **The notice was
> in the form of a court order**, issued over the typed name "John H. Allen,
> Bankruptcy Judge." R.I., at 1.
>
> Creditor Jason Yu received the court's notice, and his attorney attended the October
> 22, 1990, meeting of creditors. This meeting was continued to permit Themy's
> newly retained counsel to file amended schedules.
>
> The bankruptcy court sent out a second notice, advising creditors of the continued
> meeting, and setting February 15, 1991, as the deadline for filing complaints under
> §§ 523 and 727. **The notice was again in the form of a court order**, bearing the
> bankruptcy judge's name. On February 14, 1991, creditor Yu filed a complaint
> against Themy seeking to have his debt deemed nondischargeable and seeking to
> deny Themy's discharge.

*In re Themy*, 6 F.3d 688, 689 (10th Cir. 1993). The Tenth Circuit ruled that creditors should be

entitled to rely on the bankruptcy court orders.

> Here, although the burden of protecting one's rights is ordinarily placed on the
> creditor, *e.g., In re Walker,* 927 F.2d at 1145, when the court's act affirmatively
> misleads the creditor as to a deadline, the court bears responsibility for correcting
> its error. A creditor should be entitled to rely on the court's orders. For these
> reasons, we hold that the bankruptcy court was within its authority to accept Mr.
> Yu's complaint after the sixty-day period expired.
>
> The judgment of the United States District Court for the District of Utah is
> AFFIRMED.

*In re Themy*, 6 F.3d 688, 690 (10th Cir. 1993). Here, there was no order entered by this Court

extending the deadline for the filing of claims, or other action taken by the Court or its clerk, and

the original deadline remained the same.

**VII.    THE GRANTING OF THE REQUESTED EQUITABLE RELIEF WOULD BE PREJUDICIAL TO THE WESTMINSTER CLAIMANTS.**

The Trustee's Final Report reflects that if the equitable relief sought by the Unbuilt

Owners is granted, it will result in a tremendous diminution of the distribution to be made to the

Westminster Claimants, and therefore, the granting of the equitable relief would be extremely

prejudicial to the Westminster Claimants.

## CONCLUSION

The equitable relief sought by Unbuilt Owners must be denied based on controlling law.

The relief sought is procedurally improper because no relief has been sought by an adversary

proceeding or motion. The relief sought is substantively improper because equitable relief under

§ 105 cannot displace the specific provisions of Bankruptcy Rule 9006(b)(3) and Bankruptcy Rule

3002(c)(7). For the foregoing reasons, it would be reversible error for the Court to grant equitable

relief under § 105 based on an objection made by the Unbuilt Owners to the Trustee's Final Report.

DATED this 27th day of June 2025.

RAY QUINNEY & NEBEKER P.C.

/s/ *Steven W. Call*
Steven W. Call
Mel Jones-Cannon

*Attorneys for the Westminster Claimants*

1713544

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025 I caused the foregoing **SUR-REPLY AND SUPPLEMENTAL MEMORANDUM IN SUPPORT WESTMINSTER CLAIMANTS' OBJECTION TO AND RESPONSE TO UNBUILT OWNERS' OBJECTION TO TRUSTEE'S FINAL REPORT** with the Clerk of the Court using the Court's CM/ECF System, which served notice and/or a copy of the foregoing on all electronic filing users in this case and parties requesting notice as follows:

- **Steven R. Bailey tr**  karen@baileylaw.org, UT06@ecfcbis.com
- **Jeffery A Balls**  jballs@parrbrown.com, wtuckett@parrbrown.com
- **Steven W. Call**  scall@rqn.com, docket@rqn.com,ecasaday@rqn.com
- **Deborah Rae Chandler**  dchandler@aklawfirm.com
- **Joseph M.R. Covey**  jcovey@parrbrown.com, calendar@parrbrown.com; lstumpf@parrbrown.com
- **Andres' Diaz**  courtmail@adexpresslaw.com
- **Wesley D. Felix**  wfelix@felixweinberg.com
- **George B. Hofmann**  ghofmann@ck.law, mparks@ck.law; enilson@ck.law
- **Reid W. Lambert**  rlambert@strongandhanni.com, cjohnson@strongandhanni.com
- **Brandon C. Marx**  bmarx@foley.com
- **Maxwell Milavetz**  milamax09@gmail.com
- **Blake D. Miller**  bmiller@aklawfirm.com, millermobile@gmail.com; miller.blaked@gmail.com
- **Brittany J Nelson**  bnelson@foley.com, tscannell@foley.com, hsiagiandraughn@foley.com, acordero@foley.com
- **Chad S Pehrson**  cpehrson@kba.law, exec_assistant_csp@kba.law
- **United States Trustee**  USTPRegion19.SK.ECF@usdoj.gov
- **Brenda Elizabeth Weinberg**  bweinberg@ck.law
- **Robert G. Wing**  rwing@parrbrown.com

*/s/ Steven W. Call*

**EXHIBIT 2**

## Erin Casaday

| | |
|---|---|
| **From:** | Steve Bailey <Steve@baileylaw.org> |
| **Sent:** | Wednesday, June 18, 2025 8:02 PM |
| **To:** | Steven Call |
| **Subject:** | Re: Objection and Response to objectioin made to Trustee's final report |

**This Message Is From an External Sender**

This message came from outside your organization.

I filed the second notice that our tickler system did not recorded the first notice so I filed the second notification. However I discovered the first notice was actually filed I withdrew the second notice. Reed had received the second withdrawal by ecf.
Sent from my iPhone

